**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **8:13CR135** |
| **vs.** | |
| **DANIEL T. RAY,** | **ORDER** |
| **Defendant.** | |

This matter is before the court on the motion to suppress filed by defendant Daniel T. Ray (Ray) (Filing No. 21).  Ray is charged in the Indictment with the April 6, 2013, possession with intent to distribute methamphetamine (Count I), in violation of 21 U.S.C. § 841(a)(1), and the April 6, 2013, possession of a firearm during and in relation to the drug trafficking crime set forth in Count I (Count II), in violation of 18 U.S.C. § 924(c).  **See** Filing No. 1.  There is also a forfeiture allegation seeking the forfeiture of $690.85 in U.S. currency seized from Ray on April 6, 2013.  **Id.**  Ray seeks to suppress evidence seized from a search of his person, coat, and vehicle, in Omaha, Nebraska, on April 6, 2013, by officers of the Omaha Police Department (OPD).

The court held an evidentiary hearing on Ray's motion on June 17, 2013.  Ray was present for the hearing along with his counsel, Michael J. Tasset.  The United States was represented by Special Assistant U.S. Attorney Martin J. Conboy, IV.  During the hearing, the court heard the testimony of OPD Officers Benjamin Weidmer (Officer Weidmer) and Scott Scheideler (Officer Scheideler) and Carrie Bass (Ms. Bass).  A transcript of the hearing (TR.) was prepared and filed on June 23, 2013.  **See** Fling No. 32.

**FINDINGS OF FACT**

Ms. Bass is a twenty-three year old full-time student (TR. 53).  Ms. Bass had previously dated Ray (TR. 54).  On April 6, 2013, Ms. Bass ran into Ray at a grocery store and he asked her for a ride "down north" because people with guns were trying to break into his friend's house (TR. 55-56).  Ms. Bass drove her Chevy Blazer to a gas station for gas and Ray drove from there to the residence on 28th Street (TR. 55).  Ray

drove around the block a couple times to check for people who were trying to break into the residence (TR. 56).  Seeing no one else, Ray parked in the driveway (TR. 56).

Officers Weidmer and Scheideler have each been police officers with the OPD for approximately five years (TR. 3, 35).  On April 6, 2013, Officer Weidmer and his partner Officer Scheideler, were patrolling the northeast area of the City of Omaha (TR. 3).  At approximately 2:00 a.m., dispatch notified the officers of an armed disturbance in the area of 28th and Pinkney streets (TR. 3-4, 43).  Specifically, a male had called to report multiple males armed with guns outside his house, then he hung up (TR. 4).  The residence on 28th and Pinkney streets is in a high crime area and on a dark roadway on a "fairly secluded" street having only a single residence with open lots on either side and a vacant boarded up house nearby (TR. 4, 17).  The officers had previous experience at the residence (TR. 9).  On that previous occasion, officers responded to a call that a male was threatening others with a firearm (TR. 9).  When officers arrived they observed the residence's owner in the street with a firearm and other people (TR. 9).  The owner ran down the street away from officers, but was detained and a firearm was recovered (TR. 9).  Based on this previous experience and the layout of the area, the officers had a heightened concern for officer safety and the presence of firearms (TR. 9).

On April 6, 2013, the officers approached the residence, parking their marked police cruiser near the driveway, and found a Chevy Blazer parked in the driveway (TR. 4, 13, 16, 19-20).  The officers did not activate the police cruiser's overhead lights (TR. 14).  A female, later identified as Ms. Bass, sat in the passenger seat of the Chevy Blazer (TR. 9, 16-17).  The officers observed a male, later identified as Ray, exit the vehicle driver's seat and walk quickly toward the front door of the residence (TR. 5, 16, 36, 63).  Ray was wearing a big baggy winter coat and holding the right side of his body as if he were carrying something against himself (TR. 5, 30, 33).  Officer Weidmer attempted to stop Ray as he exited the Chevy Blazer, then made additional attempts to talk to Ray as he walked the approximately twenty-five feet toward the residence (TR. 5, 14, 36).  Specifically, several times, Officer Weidmer commanded Ray to stop and show his hands because the officer could not see Ray's right hand (TR. 7, 15).  Ray disregarded Officer Weidmer but did look back at the officer multiple times (TR. 5).  Ms.

Bass exited the Chevy Blazer and observed the interaction between the officers and Ray (TR. 56-57).  When Ray reached the porch, he hopped up onto it and attempted to open the door (TR. 6).  The door was locked (TR. 6).  Ray began to bang, panic-like, on the door, appearing frantic to get into the residence (TR. 6, 36).  Ray began yelling loudly to someone in the residence to open the door (TR. 6).  Ray's voice sounded nervous and panicked (TR. 6, 36).

Officer Weidmer caught up with Ray on the porch and attempted to detain him by grabbing his left hand (TR. 7).  Ray spun around and attempted to run down the stairs away from the officer who still had a hold of him (TR. 7, 58).  Ray and Officer Weidmer ran down the steps where Officer Scheideler was standing (TR. 8, 36).  Ray continued to struggle against the officers and wriggled out of his coat (TR. 8, 30-31, 33-34, 37).  Ultimately, the officers placed Ray in handcuffs, then into the back of the police cruiser (TR. 8, 37).  Three males exited the residence and one asked the officers what was going on (TR. 9).  At some point, one of the males from the residence informed the officers Ray had been invited to the residence and was not a threat (TR. 42-44, 51, 66).  Ms. Bass yelled at the officers not to hurt Ray (TR. 37).  After the arrest, Ms. Bass attempted to pick up the coat (TR. 38).  Officer Scheideler recovered the coat, felt it was heavier than an average coat, started to pat it down, and observed the white handle of a firearm in an open pocket (TR. 8, 38).  Officer Scheideler found the Chevy Blazer's key on a red keychain in the coat's left side pocket (TR. 47, 60-61).

The officers testified about their concern for officer safety based on their training and experience (TR. 10, 23-24, 40).  Specifically, the officers testified about the "plus one" gun rule signifying their belief about the high likelihood of a second gun being in possession, either on the person or in the vehicle, of any suspect found with a weapon (TR. 10, 23-24, 40, 48).  The concern for officer safety led the officers to rely on a third officer present and make sure no other weapons were accessible to the people outside the residence, including in the Chevy Blazer (TR. 10, 24, 40, 48).  A third officer, Officer Lundquist, arrived at the residence after officers placed Ray in the police cruiser (TR. 12, 46, 61).  Officer Weidmer searched the Chevy Blazer and found a gym bag containing Ray's driver's license, bullets, methamphetamine, an electronic scale, and

some individual plastic baggies (TR. 11).  The officers did not seek or obtain consent to search the Chevy Blazer (TR. 29, 61).

The officers did not see any other person or vehicle associated with the original dispatch call (TR. 10).   Officer Weidmer initially detained Ray for failure to follow commands for him to stop and show his hands while the officers were attempting to investigate a dangerous situation and maintain officer safety, then arrested Ray for carrying a concealed weapon (TR. 17-19, 49-50).  The officers ultimately arrested Ray for being a felon in possession of a firearm (TR. 17).  The officers cited Ms. Bass with a paraphernalia charge and released her with the Chevy Blazer (TR. 25-26).

## LEGAL ANALYSIS

### A.    Standing

To claim Fourth Amendment protection, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Boyster*, 436 F.3d 986, 992 (8th Cir. 2006).  The reasonableness of the expectation of privacy must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."  *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978); **see also** *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979).   "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally."   *United States v. Barragan*, 379 F.3d 524, 529-30 (8th Cir. 2004) (**quoting** *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).   While an unauthorized driver is not likely to have a privacy interest in a vehicle, an owner or authorized driver may have a legitimate expectation of privacy within a motor vehicle.  *Nebraska v. Bakewell*, 730 N.W.2d 335 (Neb. 2007); **see** *United States v. Best*, 135 F.3d 1223 (8th Cir. 1998) (remanding for factual determination by trial court on issue of whether driver had permission to use vehicle); *United States v. Muhammad*, 58 F.3d 353 (8th Cir. 1995) (finding driver lacked standing to challenge search without showing he had been granted permission to use vehicle).

The evidence obtained by the officers indicate Ms. Bass had given Ray permission to drive the Chevy Blazer.  In addition, the officers observed Ray exiting the Chevy Blazer driver's door and found the vehicle's key in a the pocket of the coat worn by Ray.  Under these circumstances, the court finds Ray has standing to challenge the Chevy Blazer's search.

## B.    Firearm's Seizure

Ray seeks suppression of the officer's discovery of a firearm in his coat on April 6, 2013.  **See** Filing No. 21 - Motion p. 1.  Ray contends the officers only discovered the firearm after his unconstitutional warrantless seizure and the unconstitutional warrantless search of the coat.  **Id.**  The government argues no constitutional violation occurred when Ray was initially reasonably detained during the investigation of a situation involving armed parties.  **See** Filing No. 26 - Brief p. 2-3.  Similarly, the government contends, under the circumstances, the officers reasonably conducted a pat down, then searched Ray's coat.  **Id.** at 4.

The initial contact between Ray and the officers was part of an investigative detention.  An investigative detention must be supported by a reasonable articulable suspicion of criminal activity.  **United States v. Green**, 691 F.3d 960, 963 (8th Cir. 2012).

> [The Eighth Circuit] has summarized the standards used to consider whether reasonable suspicion exists as follows:
>
> The standard of articulable justification required by the fourth amendment for an investigative, **Terry**-type seizure is whether the police officers were aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warranted suspicion that a crime was being committed.  In assessing whether the requisite degree of suspicion exists, we must determine whether the facts collectively establish reasonable suspicion, not whether each particular fact establishes reasonable suspicion.  The totality of the circumstances -- the whole picture -- must be taken into account.  We may consider any added meaning certain conduct might suggest to experienced officers trained in the arts of observation and crime detection and acquainted with operating modes of criminals.  It is not necessary that the behavior on which reasonable suspicion is grounded be susceptible only to an

5

> interpretation of guilt, however, the officers must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a "hunch" or on circumstances which describe a very broad category of predominantly innocent [people].

*United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998) (internal citations and quotations omitted). "In forming a basis for suspicion, officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Maltais*, 403 F.3d 550, 555 (8th Cir. 2005) (internal quotation omitted). The Supreme Court has held "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (unprovoked flight at sight of officers in high crime area reasonably aroused officers' suspicions). Additionally, courts have held evasive and erratic behavior can contribute to a finding of reasonable suspicion. *United States v. Montero-Camargo*, 208 F.3d 1122, 1136-37 (9th Cir. 2000) (suspect took evasive and erratic path in an apparent attempt to avoid police, which was relevant to reasonable suspicion analysis). The Supreme Court noted that even where all of the suspect's conduct is lawful, if the conduct is ambiguous and susceptible to an innocent explanation as well as creating a reasonable suspicion of criminal activity, police officers may detain the individual to resolve the ambiguity. *Wardlow*, 528 U.S. at 125; **see** *United States v. Huerta*, 655 F.3d 806, 809 (8th Cir. 2011). The "protection of police and others can justify protective searches when police have a reasonable belief . . . that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).

Here the officers were dispatched to an address involving armed individuals causing a disturbance at a residence (TR. 3-4, 43). The officers had previous experience with the owner of a residence on the street carrying a firearm in the street and running from officers and other experiences in the neighborhood, which is in a high crime area (TR. 4, 9, 17). When the officers arrived at the residence they saw only one vehicle, containing two individuals, one of whom was rapidly approaching the door of the residence while appearing to conceal or hold something to his side (TR. 5, 16, 30, 33, 36, 63). The residence was in a secluded area with no other visible activity (TR. 4, 17). When police officers approached Ray commanding him to stop and show his

hands, Ray did not comply (TR. 5, 7, 14-15, 36).  Rather, Ray looked back at officers then proceeded, appearing frantic, to the residence's door where he banged and yelled for someone to let him in (TR. 5-6, 36).

The officers were concerned Ray was attempting to conceal a firearm as one of the males reported to be outside the residence causing a disturbance.  The officers had a reasonable concern for their and others' safety based on their experience in the area and specifically with the residence.  Ray's conduct increased, rather than decreased, the officers' suspicion.  Further, when an officer attempted to touch Ray, he attempted to run and struggled with the officers (TR. 7-8, 30-31, 33-34, 37, 58).  Both officers were able to place Ray in handcuffs and into the police cruiser (TR. 8, 37).  Handcuffing Ray and placing him in the police cruiser was reasonably necessary to determine if he had a firearm and the other circumstances of his presence at the residence.  Although an additional officer arrived at the scene within minutes of Officers Weidmer and Scheideler, the two officers acted reasonably to handcuff Ray, who did not initially comply with commands and attempted to run from officers, when the Chevy Blazer's passenger and several occupants of the residence became involved.  **See *United States v. Newell***, 596 F.3d 876, 879-80 (8th Cir. 2010) (finding officers' acts of opening car door and removing occupants reasonable when occupants failed to comply with instructions); **also see *United States v. Stachowiak***, 521 F.3d 852, 855 (8th Cir. 2008) ("[O]fficers may take steps reasonably necessary to protect their personal safety.").

The officers' conduct was reasonable despite others' attempts to tell the officers Ray was not a threat.  First, under the circumstances, the officers may not have heard or understood the comments made by Ms. Bass and others about Ray.  Second, even if the officers were mistaken about whether Ray was a threat to themselves or others at the residence, they made a reasonable assessment of the facts, which does not detract from the finding that the officers acted reasonably in detaining Ray.  A detention based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment.  **See *Saucier v. Katz***, 533 U.S. 194, 205 (2001); *Shranklen*, 315 F.3d at 964 ("[I]f a valid search for weapons during a proper investigative stop of a vehicle results in the discovery of drugs rather than weapons, the officers need not ignore the drugs, and the Fourth Amendment does not require their suppression.").  Therefore, the

7

officers had reasonable suspicion to detain Ray and were entitled to conduct a protective sweep of Ray's coat prior to allowing Ms. Bass access to the coat.  Officer Scheideler observed the weight of the firearm when he lifted the coat then saw the firearm in an open pocket.  **See _Horton v. California_**, 496 U.S. 128, 135 (1990) ("An object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant.").  After locating the firearm, the officers had probable cause to arrest Ray.

**C.    Gym Bag's Search**

Ray seeks suppression of all evidence discovered in his gym bag found in the passenger compartment of the Chevy Blazer on April 6, 2013.  **See** Filing No. 21 - Motion p. 1.  Ray contends the officers only discovered the gym bag after the unconstitutional warrantless search of the vehicle.  **_Id._**  Specifically, Ray argues the vehicle's search cannot be justified incident to his arrest because he was arrested outside the vehicle and removed to the police cruiser prior to the search.  **See** Filing No. 22 - Brief p. 1-3.  As such, Ray contends the reasoning in **_Arizona v. Gant_**, 556 U.S. 332 (2009), precludes a finding the officers permissibly searched the Chevy Blazer incident to arrest.  **_Id._**  The government argues, under the totality of the circumstances, the officers had probable cause to believe evidence of a crime was present in the Chevy Blazer.  **See** Filing No. 26 - Brief p. 4-5.  In the alternative, if the officers lacked probable cause, the government contends the search was a permissible extension of a **_Terry_** search.  **_Id._** at 5.

In **_Gant_**, the defendant was arrested for driving with a suspended license, handcuffed, and placed in the patrol cruiser.  **_Gant_**, 556 U.S. at 336.  Officers searched the vehicle incident to the arrest and discovered a gun and cocaine.  **_Id._**  The United States Supreme Court held "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."  **_Id._** at 351.  The holding from **_Gant_** does not require suppression in this case where the officers had legitimate concern for safety after Ray's arrest and reason to believe evidence may be found in the Chevy Blazer.

8

If an "officer [has] an objectively reasonable concern for officer safety or suspicion of danger" the officer may "conduct a protective sweep of the vehicle . . . to search for dangerous weapons that the suspect or other occupants might later access." *United States v. Smith*, 645 F.3d 998, 1002-03 (8th Cir. 2011) (**citing** *Long*, 463 U.S. at 1045-52). A valid "search [for the purposes of officer safety] extends to closed containers, such as [a] pouch, that [is] found within the vehicle's passenger compartment." *United States v. Shranklen*, 315 F.3d 959, 963 (8th Cir. 2003). "[A]n officer may search a container found in a vehicle when that container might hold a weapon." *Id.*

The officers testified the search was based on safety concerns under *Terry*. Officer Weidmer was reasonably concerned about the officer and others' safety based on the dispatch information, time, location of the vehicle, and Ray's conduct. The officers' suspicions increased as they approached Ray. Ray's apprehension led to the discovery of a concealed firearm. From the time the officers viewed the firearm, prior to the vehicle's search, they had probable cause to arrest Ray.

The concern for safety or impetus for further investigation did not terminate upon Ray's arrest. The reasonable concern would not dissipate absent a search of the vehicle for weapons, despite Ray's initial removal from the vehicle, because the circumstances of this case justified the officer's reasonable belief that Ray, Ms. Bass, or one of the residence's occupants posed a danger if they were permitted to enter the vehicle. **See** *Long*, 463 U.S. at 1049 (noting a suspect is no less dangerous simply because he is not arrested). The officers permissibly searched the passenger compartment of the vehicle believing Ms. Bass or one of the residence's occupants might gain immediate control of a weapon from the vehicle. **See** *id.*; *United States v. Salamasina*, 615 F.3d 925, 930 (8th Cir. 2010) (reasoning officer safety justified search of vehicle where unsecured passengers may gain access to weapons or destroy evidence). Accordingly, the fact that the driver had been removed from the vehicle and handcuffed did not eliminate the necessity of the search.

Alternatively, it is reasonable to believe the vehicle contained evidence of the offense of arrest. Ray argues there could not have been evidence of the offense of arrest in the vehicle because the officers had all the evidence they needed for the

offenses, specifically obstructing a police officer and carrying a concealed weapon, at the time of the arrest (TR. 70-71).  Despite finding the firearm in Ray's coat pocket, the officers could reasonably believe they would find other evidence related to the offense in the Chevy Blazer, such evidence could include ammunition for the firearm, a receipt indicating the ownership of the firearm, and other firearms.  **See *United States v. Casteel***, No. 11-3717, 2013 WL 3106410 (8th Cir. June 21, 2013) (finding reasonable suspicion existed to find ammunition or paperwork related to a firearms investigation inside the vehicle after firearms recovered; **see also *United States v. Leak***, No. 3:09CR81W, 2010 WL 1418227, at *4-5 (W.D.N.C. Apr. 5, 2010) (finding reasonable suspicion existed to search vehicle after driver's arrest for carrying a concealed weapon).  The officers testified that, based on their training and experience, they searched the Chevy Blazer expecting to find such evidence.  The officers did not exceed the scope of a reasonable search when they searched the gym bag found in the Chevy Blazer.  The gym bag was easily accessible and could conceal a dangerous weapon or evidence of Ray's crime of arrest.  Upon consideration,

**IT IS RECOMMENDED TO SENIOR JUDGE RICHARD G. KOPF** that:

Ray's motion to suppress (Filing No. 21) be denied.

### ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) business days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 15th day of July, 2013.

BY THE COURT:
 s/ Thomas D. Thalken
United States Magistrate Judge